CRAIG H. MISSAKIAN (CABN 125202)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONAH P. ROSS (CABN 305076)
Assistant United States Attorney

  1301 Clay Street, Suite 340S
  Oakland, CA 94612
  Telephone: (510) 637-3680
  Fax: (510) 637-3724
  E-Mail: jonah.ross@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MAURICE HERRON, <br><br> Defendant. | CASE NO. 4:25-MJ-71446 MAG <br><br> **GOVERNMENT'S DETENTION MEMORANDUM** |

## I. INTRODUCTION

Defendant Maurice Herron—a man with at least eight adult felony convictions and who has completed multiple prison terms—is currently on parole following convictions for possessing a firearm as a felon and burglary. Despite the close supervision of parole, Herron has now been charged for possessing loaded firearms on three separate occasions within a year of his release from prison.

Herron is a danger to the community, and it is imperative that he remain detained pending trial.

## II. BACKGROUND

### a. Since His Release on Parole in November 2024, Herron Has Been Arrested While Possessing a Loaded Firearm on Three Separate Occasions

On November 20, 2024, Herron was released on parole after serving prison terms for convictions for felon-in-possession of a firearm and burglary. Since his release, and despite the close supervision of parole, Herron has unlawfully possessed loaded weapons on three occasions and is suspected of being the getaway driver in an attempted armed robbery in which Herron's accomplice was shot and killed by the intended victim.

#### 1. January 7, 2025: Herron Fled from Police While Possessing a Loaded Pistol

On January 7, 2025, a plain clothes officer with the Oakland Police Department observed Herron standing with a group next to a food stand in Oakland. The officer reported that the right side of Herron's jacket appeared weighted, consistent with carrying a concealed firearm in the pocket. When a vehicle approached and came to a sudden stop by the group, Herron appeared startled and immediately reached into his jacket pocket. The officer file-checked Herron and found that he was on active probation with a four-way search clause, permitting warrantless search of his person. (He appears to have been on parole at the time, but the officers' file checks indicated it was probation.)

The officer directed uniformed OPD officers to detain Herron to perform a probation search of his person. The uniformed officers also ran a file check on Herron and learned that he was on probation (again, it appears that he was actually on parole) following convictions for felon in possession of a firearm and burglary. When the officers arrived on scene and called out to Herron, he took off on foot. After a brief chase, they detained Herron and located a Glock pistol in his jacket pocket. The Glock was loaded with a round in the chamber (meaning a round could be discharged with a pull of the trigger).

In a post-Miranda statement, Herron admitted to having the gun for the past week, and that he was presently on parole following a three-year prison sentence. A records check showed the gun had been reported stolen out of Modesto.

Herron has been indicted federally for possession of this firearm. (*See* 4:25-cr-00362 AMO.)

### 2. April 21, 2025: Herron Possessed a Firearm in a Vehicle Two Days After Participating in an Attempted Armed Robbery During Which His Accomplice Was Shot and Killed

On April 21, 2025, while released with a GPS ankle monitor, Herron was arrested on a state warrant for his suspected involvement in an attempted armed robbery two days earlier that turned fatal when Herron's suspected accomplice was shot and killed by the intended victim of the crime.

When officers located him, Herron was seated in the rear seat of a vehicle. After Herron exited the vehicle, officers discovered a Glock 17 semiautomatic pistol in the passenger seat door pocket where Herron had been seated. The pistol contained a round in the chamber (meaning a round could be discharged with a pull of the trigger) and additional rounds in the magazine. Herron has been charged in Alameda County for this firearm possession.

### 3. November 15, 2025: Herron Possessed a Loaded Pistol, Which He Discarded in the Back Seat of a Police Vehicle Following His Arrest

On November 15, 2025, Herron was observed by an Orinda Police Department officer making an illegal U-turn in Orinda, CA. The officer conducted a traffic enforcement stop and discovered that Herron had an outstanding federal warrant for his arrest, following his indictment in Case No. 25-cr-362 AMO. The officer arrested Herron and conducted a cursory pat search, but did not discovery any weapons on Herron's person.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Herron was placed in the back of the officer's patrol vehicle, where he was recorded by a rear-facing camera. The video showed that, while handcuffed and seated in the rear, Herron removed a dark-colored pistol with a distinct image on the pistol's slide from his waistband and placed it under the right rear seat. Herron then used his foot to attempt to conceal the pistol. The following image shows Herron removing the pistol from his waistband while seated in the rear of the patrol vehicle:



On November 26, 2025, a police officer discovered a Glock 19 semiautomatic pistol in the rear seat of the patrol vehicle, in the same location where Herron had previously discarded the pistol. The pistol's slide contained a printed image that appeared consistent with the image from the video recording of Herron from November 15. The Glock 19 contained a round in the chamber (meaning a round could be discharged with a pull of the trigger) and the magazine contained 14 live rounds of ammunition.

    **b.**    **The Court Previously Granted Herron's Release to a Halfway House, but the Court and the Government Then Believed Incorrectly That Herron Had Been Unarmed At the Time of His Arrest**

In Case No. 25-cr-362 AMO, the Court previously granted Herron's release to a halfway house. At the time, however, the loaded pistol had not yet been recovered from the rear of the patrol vehicle, and both the Court and the government believed incorrectly that Herron had been unarmed at the time of

his arrest on November 15, 2025, and that roughly seven months had passed since his last known criminal offense.

### III. LEGAL STANDARD

Under the Bail Reform Act of 1984, as amended, the Court must detain a defendant pretrial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

### IV. HERRON'S INVOLVEMENT IN VIOLENT CRIME AND HIS REPEATED POSSESSION OF FIREARMS WHILE ON PAROLE FOR A FIREARMS OFFENSE AND WHILE ACTIVELY FACING FIREARMS CHARGES PROVE THAT HE IS A DANGER TO THE COMMUNITY

The United States submits that no condition or combination of conditions will protect the public should he be released from custody.

///

///

///

### a. The Nature And Circumstances Of The Offense And The Danger Herron Poses To The Community Weigh In Favor Of Detention

In the past year, Herron has been charged with three separate firearms offenses while on parole for a firearms offense following a multiyear prison sentence. One of these occurred after Herron is suspected to have been the getaway driver in an attempted armed robbery that turned fatal. During two of these offenses, Herron was wearing a GPS ankle monitor as required by the terms of his release at the time. And Herron habitually carries his firearms in the most dangerous way possible: with a round already inserted into the chamber so that the weapon can be fired with a single pull of the trigger.

Herron has proved that there are no conditions the Court can impose that will reasonably ensure the safety of the community. During each of these possessions, Herron was already under the close supervision of parole, and during two of them, he wore GPS ankle monitor. And while arrested in the instant offense, Herron was not only on parole, but also facing *two* active firearms cases out of Alameda County. Herron's conduct gives the Court every reason to believe that if Herron is released, he will acquire another firearm. Even the most stringent conditions are insufficient.

### b. The Weight of the Evidence Against Herron Is Overwhelming

The evidence against Herron is overwhelming. The police vehicle's internal video clearly shows Herron removing a pistol from his waistband and then discarding it beneath the vehicle's rear seat. The video also shows that the pistol contained a distinct image on its slide. Subsequently, an officer recovered a pistol with an image on its slide appearing consistent with the image from the video from the same location where Herron had previously discarded the pistol.

### c. Herron's Criminal History and Prior Conduct Demonstrate the Danger He Poses

Herron's criminal history demonstrates an unrelenting pattern of arrests for an array of crimes including firearms offenses, robberies, and burglaries, which have resulted in multiple prison sentences. Herron has given the Court no reason to believe he intends now to live a law-abiding life.

/ / /

/ / /

/ / /

GOVERNMENT DETENTION MEMO
4:25-MJ-71446 MAG                                                5

**V.     CONCLUSION**

For the reasons set forth above, Herron is a danger to the community. The Court should therefore detain Herron pending trial.

DATED:  December 17, 2025                    Respectfully submitted,

CRAIG H. MISSAKIAN
Acting United States Attorney

*/s/ Jonah P. Ross*
JONAH P. ROSS
Assistant United States Attorney