ALBERT J. BORO, JR. (CA Bar #126657)
ajboro@boro-law.com
BORO LAW FIRM
345 Franklin Street
San Francisco, CA 94102
Telephone: (415) 621-2400
Facsimile: (415) 276-5870

Attorney for Defendant
MAURICE HERRON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MAURICE HERRON,<br><br>　　　　Defendant. | No. 4:25-mj-71446-MAG-KAW<br><br>DEFENDANT MAURICE HERRON'S MEMORANDUM IN OPPOSITION TO GOVERNMENT'S DETENTION MOTION<br><br>Date: December 18, 2025<br>Time: 10:30 a.m.<br>Court: Hon. Kandis A. Westmore |

　　　　Defendant Maurice Herron respectfully submits this Memorandum in Opposition to the Government's Detention Motion and requests his pretrial release under 18 U.S.C. § 3142. In the present case, he is charged with being a felon in possession of a firearm *prior to* his starting federal pretrial release in his other federal felon-in-possession case, *United States v. Herron*, No. 25-cr-00362-AMO-KAW (N.D. Cal.) ("*Herron I*"). The charge in *Herron I* is the same as the charge here, and this Court ordered his pretrial release in *Herron I* pending trial. Order Setting Conditions of Release & Appearance Bond, *Herron I*, dated Nov. 21, 2025 (Dkt. #10). The Court should do the same in this second felon-in-possession case, and order Mr. Herron's pretrial release in this case on the same conditions as *Herron I*.[1]

　　　　The Government bears the burden of proof to support an order of pretrial detention here by

---

[1] Mr. Herron hereby withdraws his request for permission to attend the family Christmas celebration at his mother's home.

DEFENDANT MAURICE HERRON'S
MEMORANDUM IN OPPOSITION TO DETENTION

1

clear and convincing evidence. 18 U.S.C. § 3142(f). The Government does not contend that the combination of release conditions cannot mitigate against a risk of non-appearance. This is also not a case where the Government enjoys a rebuttable presumption of risk of flight or danger to the community. *Id*. § 3142(d)(2) & (3). The key issue posed by the Government's detention motion is whether the risk of danger to the safety of the community may be reasonably mitigated by a combination of release conditions.

To make that determination "the Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). "In determining whether a defendant poses a risk of flight or represents a danger to the community, courts must consider '(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; [and] (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.'" *United States v. Briggs*, 697 F.3d 98, 101 (9th Cir. 2012) (quoting 18 U.S.C. § 3142(g)). "Any doubts regarding the propriety of pretrial release are to be resolved in favor of the defendant." *Diaz-Hernandez*, 934 F.3d at 1198. Consideration of the § 3142(g) factors demonstrates the lack of clear and convincing evidence that no combination of release conditions can reasonably mitigate the risk of danger to the community.

First, the Government emphasizes in its Detention Memorandum[2] the initial factor of the nature and circumstances of the offense charged, but the new evidence does not rise to clear and convincing evidence. The Court has already found that the same criminal charge for similar conduct in 2025, being a felon in possession of a firearm, did not create such a risk to the safety of the community that a combination of release conditions could not reasonably mitigate that risk. The Government argues that this new gun possession charge was not known prior to the last detention hearing, but that does not constitute clear and convincing evidence, altering the balancing of the § 3142(g) factors. *See* Gov. Det. Memo. at 3-4. The Government argues the instant offense was committed by Mr. Herron while on state parole, but it admits that was the same for the January 7, 2025 offense charged in *Herron I*, for which the Court granted pretrial release, and the April 21, 2025 state

---

[2] Gov. Det. Memo., *United States v. Maurice Herron*, No. 4:25-mj-71446-MAG-KAW (N.D. Cal.) ("*Herron II*"), filed Dec. 17, 2025 (Dkt. #10).

DEFENDANT MAURICE HERRON'S
MEMORANDUM IN OPPOSITION TO DETENTION                                                              2

gun possession charge. *See id*. at 1-2, 5. The Government also contends that the use of an ankle monitor at the time of the April 21, 2025 state charge and on the date of his arrest on the instant case did not dissuade his criminal conduct, *id*. at 2, 5, but again the April 21, 2025 arrest was part of the record in the first pretrial release determination. *See* Pre-Bail Report, at 11, *Herron I*, filed Nov. 18, 2025 (under seal). Thus, these are not new facts supporting a different release outcome here.

New information that the Court has is Mr. Herron's performance on federal pretrial release since the November 21, 2025 release order. The record shows that he was under strict supervision by Pretrial Services during the approximately two weeks he was on federal pretrial release until his arrest in this case. Pretrial Services filed a report that shows his movements were tracked everyday while on GPS monitoring. Status Memorandum and Violation Notice, *Herron I*, filed Dec. 8, 2025 (under seal). The only violation was a technical one: picking up a cup of coffee from a Starbucks near the bus stop while he waited for the bus back to the halfway house after taking a tuberculosis test at the direction of the halfway house. At the December 9 hearing, this Court admonished Mr. Herron that even the slightest deviation in travel must be approved in advance by Pretrial Services, but it did not find that the violation warranted revocation of pretrial release.

The Government argues that his arrest on the felon-in-possession charges while on state parole supervision and on an ankle monitor shows supervision conditions cannot reasonably mitigate the danger to the community, but the recitation of the facts for each arrest in the Government's Detention Memorandum shows that the state supervision was of a lesser order of magnitude than ordered by this Court. It is apparent from the Government's recounting of each alleged crime that Mr. Herron's movement was not restricted in any meaningful way, as it is in the federal bond, *see* Gov. Det. Memo. at 2, that he was not confined to a halfway house except for limited exceptions approved in advance by his supervisor, and the ankle monitor appears to have not been monitored closely, as U.S. Pretrial Services is doing here. These combination of the release restrictions imposed by the Court and the supervision of U.S. Pretrial Services reasonably mitigate against any danger to the community posed by his release.

Second, the Government advocates that the weight of the evidence for this charge is "overwhelming," *id*. at 5, but Mr. Herron is presumed innocent. This second factor " 'is the least

important of the various factors' " under § 3142(g).  *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008).  Mr. Herron has not yet had the opportunity to challenge the Government's case against him before a jury, but the Government's Detention Memorandum suggests it is not as open and shut as the Government would like.  The firearm was found in the police car on November 26, *eleven days* after Mr. Herron's arrest on November 15.  Gov. Det. Memo. at 2-3.  There are many questions to pursue in discovery and investigation, including who else had access to that patrol car during those eleven days?  Has a fingerprint and DNA analysis been run on the firearm?  What other days are their video from the camera showing the back of the patrol car?   This second factor does not provide clear and convincing evidence to alter the Court's prior pretrial release determination.

Third, the history and characteristics of Mr. Herron support the conclusion that a combination of release conditions will reasonably mitigate the risk of danger to the community.  Mr. Herron has expressed a willingness to participate in mental health counseling and substance abuse counseling.  Pre-Bail Report at 12.  Pretrial Services notes that Mr. Herron began using marijuana on a daily basis since he was 12 or 13 years old, and his mother reports that he may have an addiction to marijuana.  *Id*. at 5.  His criminal history also appears to begin at the age of 13.  *Id*. at 6.  There can be no doubt that daily use of marijuana during those early formative years, when the brain is far from developed, could be linked to bad decisionmaking, similar to some of the decisions reflected in Mr. Herron's prior criminal record.  Release to the halfway house will allow him to get this much needed substance abuse and mental health counseling – which should reduce the danger to the community – but he will not have access to that treatment in pretrial detention.

While at the halfway house, Mr. Herron had taken steps to be responsible, looking for possible employment.  Prior to his arrest, he was pursuing a position with Glide Memorial, which is near the halfway house, and submitted an online application to work on events support at a Mission Street, San Francisco location in connection with the upcoming Super Bowl.  He has also started online truck driving classes.  Obviously, any employment he would like to start would require approval by Pretrial Services, who would research the employer, worksite, and location to evaluate if the job was consistent the goal of reasonably mitigating risk of danger to the community.  By obtaining employment, the risk of danger to the community is reduced by the integration of Mr. Herron into a law-abiding lifestyle,

but this will not be possible in pretrial detention.

The attached letter from Ms. Remy Martin, Mr. Herron's longtime girlfriend and the mother of their three-month-old son, shows the family support Mr. Herron has to do well on pretrial release. *See* Ex. A *infra*; *see also* Pre-Bail Report at 4. Ms. Martin believes that the structure of the halfway house will provide supervision to keep him employed, participating in mental health counseling, and involved in his infant son's life, and states in the two weeks he was there she saw him "taking positive steps forward." Mr. Herron also has the support of his sureties, his mother Ronisha Randolph and cousin Lester Stanley, who are sureties on the bond in *Herron I* and are willing to be sureties on the bond on this case. This support from family supports the conclusion that a combination of release conditions can reasonably mitigate the risk of danger to the community.

Fourth, the Government stresses Mr. Herron's prior criminal record as evidence of the nature and seriousness of the danger to the community from his pretrial release, Gov. Det. Memo. at 6, but the Court had that information when it approved his pretrial release in *Herron I*. The new charge is similar to his prior conduct and occurred before he was on federal pretrial release. Thus, this fourth factor does not provide the Government with clear and convincing evidence, supporting a different outcome in this case.

The Court inquired of counsel if there were any cases similar to the present where a federal pretrial releasee was arrested on another federal charge for conduct occurring before pretrial release. Counsel has so far only located one case that generally fits that fact pattern, but the holding did not involve the issuance of the release bond. In *United States v. Wilks*, 15 F.4th 842 (7th Cir. 2021), Mr. Wilks was on federal pretrial release (over the Government's objection) on a charge of possessing a firearm after being convicted of misdemeanor domestic violence in violation of 18 U.S.C. § 922(g)(9). 15 F.4th at 844. A few months later he was added to a much more serious preexisting federal criminal prosecution, and charged with conspiracy to distribute methamphetamine and four telephone counts, as well as the original firearm possession count, and he was continued on his original bond. *Id*. at 845. The Seventh Circuit did not revisit that bond decision, which is the posture of our case (but with less serious charges than in *Wilks*), and the *Wilks* decision concerned the revocation of that pretrial release due to later violations. The District Court had revoked Mr. Wilks's pretrial release due to his

attendance at a wedding (with the Court's permission) but stopping at a bar at 2 a.m. (without the Court's permission) at which a shooting occurred while Mr. Wilks was there. *Id.* The Court of Appeal reversed the revocation for further proceedings because the record did not show that the District Court had considered the § 3142(g) factors to determine that there were no conditions or combination of release conditions that will assure that the defendant will not flee or pose a danger to the safety of the community. *Id*. at 848. *Wilks* shows that pretrial release is not barred even if the later filed federal charges predating federal supervision are very serious, but § 3142(g) requires inquiry whether there are release conditions that will reasonably mitigate against risk of flight and danger to the community.

The Court correctly determined that a combination of release conditions, including confinement in a halfway house, substance abuse and mental health counseling, employment approved by Pretrial Services, and drug testing – would reasonably mitigate the risk of danger to the community due to the felon-in-possession charge in *Herron I*. Here, unlike *Wilks*, Mr. Herron's new federal offense is the same offense as the one the Court has already found appropriate for pretrial release. The above discussion of the §3142 factors shows a similar conclusion should be reached in this case as in *Herron I*.

## CONCLUSION

For the foregoing reasons, Mr. Herron respectfully requests that the Court deny the Government's detention motion, and grant his request for pretrial release on the same terms and conditions that the Court approved for his pretrial release in *United States v. Herron*, No. 25-cr-00362-AMO-KAW (N.D. Cal.).

Dated: December 18, 2025            Respectfully Submitted:

                                              BORO LAW FIRM

                                              */s/ Albert J. Boro, Jr.*
                                              ALBERT J. BORO, JR.

                                              Attorney for Defendant
                                              MAURICE HERRON

# EXHIBIT A

Remy Martin

Mother of Maurice Herron's child

December 14, 2025

Your Honor,

I am writing this letter in support of the release of Maurice Herron to a halfway house program.

Prior to his incarceration, Maurice Herron was working and actively involved in caring for his son. He made consistent efforts to provide support and remain present in his child's life. Since being released to the halfway house he has been taking positive steps forward, including anger management classes and participating in classes for a trucking program. This structured environment has provided him with stability, accountability, and access to resources that support personal growth.

I believe the halfway house is a positive and appropriate placement for Maurice Herron. It offers supervision while allowing him the opportunity to continue improving himself, pursue employment, and remain involved in his son's life in a meaningful way. Being placed in this program gives him the chance to continue building responsibility rather than being fully confined and disconnected from his family.

I truly believe that with this opportunity, structure, and support Maurice Herron has the ability to turn his life around and stay on the right path. He has expressed a strong desire to be present for his son and to see him grow up. Allowing him to remain in a supervised program rather than behind bars would support that goal while still holding him accountable.

Thank you for your time and consideration.

Respectfully,

*Remy Martin*

Remy Martin